JOSEPH DIXON,

        Plaintiff,                         Case No. 2:13-14340

v.                                  HONORABLE STEPHEN J. MURPHY, III

GRAND TRUNK WESTERN RAILROAD
COMPANY,

        Defendant.

_____/

## OPINION AND ORDER RESOLVING MOTIONS IN LIMINE

The parties collectively filed 49 motions in limine: 43 from Defendant and six from Plaintiff. The Court has reviewed the motions and finds that a hearing is unnecessary.

As the Court noted at the Final Pretrial Conference when it urged the parties to avoid engaging in expensive and pointless pretrial motion practice: motions in limine serve particular purposes. By making evidentiary rulings ahead of trial, the Court can facilitate wise preparation by the parties and prepare a smooth path for trial—particularly by casting aside inadmissible evidence that might confuse or prejudice the jury. *See Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007). Motions in limine are meant to deal with discrete evidentiary issues related to trial, and are not "procedural devices for the wholesale disposition of theories or defenses." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) (citation omitted). For that reason, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The matters contained in the motions are largely uncontested. The parties' disputes arise over how the contested evidence will be used at trial. The reasons behind the parties' motions are not entirely misplaced; at trial, some of evidence will likely be excluded, or limited to particular purposes. But none of the evidence described in the motions is inflammatory or otherwise so irreversibly prejudicial that the jury could not be properly instructed on how to consider or disregard it. There is therefore little need to limit the introduction of evidence and testimony in advance, particularly on the scale urged by the parties. In contrast, granting even a modest portion of the relief sought in the parties' motions would create a minefield of predetermined yet open-ended evidentiary rulings; that disposition would lead to more disputes and sidebars at trial, rather than fewer—ironically resulting in the "mini trials" both parties profess a desire to avoid.

The Court will briefly resolve each of the pending motions with the foregoing reasoning in mind.

I. Defendant's Motions

*MIL 1 (ECF 80) — Denied*

Defendant does not seek relief in the motion.

*MIL 2 (ECF 81) — Granted*

Plaintiff does not seem to oppose the relief requested and there is no relevance in testimony or argument that the Plaintiff is either entitled to or has received benefits from other sources.

*MIL 3 (ECF 82) — Granted in part*

In light of Plaintiff's concession in his response brief, he is precluded from offering evidence or mentioning Defendant's size, revenue, state of incorporation, or the location

of its headquarters, other than for the limited purposes of (1) comparing it to other railroads which have implemented ergonomic controls and (2) showing that it has the resources to implement a particular program or control.

*MIL 4 (ECF 83) — Granted*

In light of Plaintiff's concession in his response brief, he is precluded from making the erroneous claim that he must prove only "slight negligence."

*MIL 5 (ECF 84) — Denied*

The protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. The parties may object to testimony concerning Plaintiff's behavior during trial and the Court will rule on the objections individually.

*MIL 6 (ECF 85) — Denied without prejudice*

The protections sought by Defendant are premature. If, after any testimony on damages but prior to closing arguments, Defendant remains concerned about the potential content of Plaintiff's closing argument, it may bring its concerns to the Court again, out of the jury's hearing.

*MIL 7 (ECF 86) — Denied*

The Defendant's concerns can be most properly and adequately addressed through jury instructions. A preemptive limit on testimony is unnecessary.

*MIL 8 (ECF 87) — Denied*

Defendant does not seek relief in the motion.

*MIL 9 (ECF 88) — Denied*

Defendant does not seek relief in the motion.

*MIL 10 (ECF 89) — Denied*

The Defendant's concerns can be most properly and adequately addressed through jury instructions, and, if necessary, objections. A preemptive limit on testimony is unnecessary.

*MIL 11 (ECF 90) — Granted*

The Defendant's payment of medical bills is irrelevant to the claims here. The Court will grant the motion. If Plaintiff wishes to revisit the issue, he may bring the evidence to the Court's attention on the morning he intends to introduce it, out of the hearing of the jury.

*MIL 12 (ECF 91) — Denied*

Evidence of safer alternatives could be relevant in determining whether Defendant was negligent. Defendant's insistence that Plaintiff has no such evidence may prove true, but it is no reason to preclude such evidence wholesale and in advance of Plaintiff attempting to introduce it.

*MIL 13 (ECF 92) — Granted in part, denied in part*

Defendant conceded that at the time of its reply, Plaintiff still had "ample time to produce the exhibits and, if necessary, produce the witnesses through whom plaintiff intends to introduce them for supplementary telephone depositions." ECF 181, PgID 4080. Defendant therefore requested that the Court "exclude any exhibit not timely produced to its counsel." *Id.* at 4081. Some time has passed since the reply was filed, so the Court will mostly deny the motion without any finding of what specific pieces of evidence were or were not timely produced. The parties are ordered to confer as to what potential evidence Defendant still deems untimely produced and the Plaintiff must produce it.

*MIL 14 (ECF 93) — Denied*

The mere occurrence of a meeting or conversation is not protected by attorney-client privilege. Defendant may object if testimony elicited at trial encroaches on privileged communications.

*MIL 15 (ECF 94) — Denied*

Defendant does not seek relief in the motion.

*MIL 16 (ECF 95) — Denied*

The protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. Nevertheless, Plaintiff is cautioned that the trial is to focus on Plaintiff's actual claims, and the evidence in specific support of those claims. The Court will not hesitate to sustain objections if testimony veers into inadmissible matters.

*MIL 17 (ECF 96) — Denied*

The Defendant's concerns can be most properly and adequately addressed through in-trial objections, if necessary. The scenario described by Defendant—wherein Plaintiff testifies that he would have lost his job had he raised safety concerns—likely lacks foundation and an objection would be sustained. Considering such a question and answer in the abstract, however, is not particularly helpful and granting the motion is therefore unnecessary. Both parties are cautioned against retracing at trial the circuitous path of arguments set forth in their briefs.

*MIL 18 (ECF 97) — Denied*

Defendant moved to "exclude claims governed by" the Railway Labor Act and argues that it would be inappropriate and inconsistent with federal law "to permit the jury to interpret" the collective bargaining agreement between Defendant and its employees. ECF 97, PgID 2733, 2736. Motions in limine are not the place to challenge claims, but rather,

evidence likely to be made in support of those claims. The parties have not yet submitted their proposed jury instructions. Until the Court determines how it will instruct the jury, it would be premature to determine what evidence on this matter would or would not assist the jury.

*MIL 19 (ECF 98) — Denied*

The protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. The Court will not hesitate to sustain objections by Defendant if questioning by Plaintiff veers into impropriety or matters of inadmissibility.

*MIL 20 (ECF 99) — Granted in part, denied in part*

If either party intends to introduce evidence of injuries sustained by other employees, the party must alert the Court of its intent in advance—preferably first thing each morning of trial—out of the hearing of the jury. The Court will entertain specific objections based on dissimilarity at that time.

*MIL 21 (ECF 100) — Denied*

Defendant objects to a chart included in an expert witness's report that lays out the present value of general household services, per year, over time. Specifically, Defendant objects to the possible admission of the chart on the grounds that the expert who prepared it did not take into account what types of tasks Plaintiff actually needed or might need to have performed by someone else. Consequently, Defendant asserts that the "replacement cost" used is unreliable and inapplicable to Plaintiff.

Although the report lists 17 tasks as constituting "household services", it is not clear how those definitions come to bear on the chart itself. A footnote to the report explains that the figures are "based on current replacement cost of $20/hour", ECF 100-2, PgID 2772,

but makes no reference to the 17 itemized tasks. Rather, the figure is apparently a roughly discounted version of what a popular cleaning service typically charges—nothing more. *See* ECF 150, PgID 3670. So the dispute over the evidence of what Plaintiff can and cannot do seems misplaced.

The chart is not complex; it calculates a simple equation on a line-by-line basis. Conceivably, a jury could prepare the same thing, once given the proper variables. The two most critical variables for the formula are the number of hours spent per day (column 3) and the replacement cost (column 4). A properly instructed jury could, however, substitute a different hourly replacement cost and the rest of the data chart could assist the jury in generating new present values. In other words, the report could serve as a template.

The Court will not preclude the admission of the report at this time. The Court may, however, reconsider its ruling once evidence of Plaintiff's need to pay for household service (or lack of such evidence) becomes apparent at trial. In the face of those changed circumstances, presenting the report to the jury may be more confusing than helpful.

*MIL 22 & 28 (ECF 101) — Granted in part*

Plaintiff is precluded from offering evidence of the sale of his boat and house.

*MIL 23 (ECF 102) — Denied*

Defendant does not seek relief.

*MIL 24 (ECF 103) — Denied*

The requested preemptive limit on testimony is unnecessary. Plaintiff must, naturally, establish a foundation before eliciting the testimony of his witnesses. Defendant's concerns can adequately and more suitably addressed through objections and, if necessary, jury instructions.

*MIL 25 (ECF 104) — Denied*

The protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. There is little efficiency to be gained by precluding testimony related to an abstract phrase in advance of trial, while granting the motion might result in prejudice to Plaintiff. Defendant may object to testimony or argument during trial and the Court will rule on the objections individually.

*MIL 26 (ECF 105) — Denied*

There is no need to preliminarily admit evidence which the parties evidently dispute with vigor. Defendant may move to admit the evidence in the normal course, subject to any objections raised by Plaintiff.

*MIL 27 (ECF 106) — Granted*

Contrary to Plaintiff's assertion, "Grandberry's own adherence to safe working procedures" is not "highly relevant to his credibility to testify regarding safety issues on the railroad," nor is "Grandberry's own attentiveness and competence as a supervisor . . . probative regarding his knowledge of the actual working conditions encountered by Plaintiff." ECF 156, PgID 3731. Consistent with Rule of Evidence 608, Plaintiff may testify as to Grandberry's "reputation for having a character for truthfulness or untruthfulness," provided a foundation has been laid for such testimony. Under the same rule, "extrinsic evidence" of Grandberry's prior conduct—including the alleged accident referred to in Dixon's deposition—may not be used to "attack or support [Grandberry's] character for truthfulness."

*MIL 29 (ECF 107) — Denied*

The existence of the CN LIFE Rules go to Defendant's familiarity with ergonomics and willingness to take affirmative steps in avoiding ergonomic risks. The Rules are therefore admissible for those purposes. If presented for another purpose, Defendant may object and the Court will entertain the objection at that time.

*MIL 30 (ECF 108) — Granted*

Like many of the parties' motions in limine, Defendant's motion #30 reveals a contention rehearsed in Wayne County Circuit Court and likely to recur in the upcoming trial. In this circumstance, however, a preliminary ruling is appropriate. Plaintiff may ask Defendant's experts whether Plaintiff's experts were present during their inspections of the premises, but Plaintiff may go no further with questions on the topic. The testimony would have little value in revealing (or dispelling) "potential bias" and that there is no need to "correct any misapprehension by the jury that Plaintiff had a representative present, or was offered the opportunity to attend and declined to do so." ECF 158, PgID 3744. In contrast, a dispute in front of the jury, and subsequent explanation of the relevant rules, is likely to cause confusion.

*MIL 31 & 38 (ECF 109) — Denied*

The Defendant's objections to the relevance of the reports are more suitably addressed through cross examination of the expert witness. The materials may assist the jury in determining the reasonableness of Defendant's conduct under the circumstances.

*MIL 32 (ECF 110) — Granted in part, denied in part*

The protective measures sought by Defendant are mostly too ambiguous to meaningfully assist in conducting the trial. Plaintiff must, of course, lay a foundation before moving to admit any of the disputed literature. The parties are ordered to confer and narrow

which items are likely to be offered and which will not; Defendant's parentheticals in its reply brief seem a good start in determining those that ought not to be offered.

Nevertheless, the Court will grant the motion insofar as it seeks to preclude Plaintiff from using non-admitted evidence as a mere "visual aid." Under Rule of Evidence 703, when a party wishes to offer facts or data relied upon by an expert that "would otherwise be inadmissible," the "proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." The Court has vetted Drs. Widmeyer and Andres and permitted them to testify as experts, but it does not follow that every source listed in their reports may be shown to the jury as a "visual aid" bolstering the experts' opinion, and there is no probative value in doing so.

*MIL 33 (ECF 111) — Denied*

There is no reason to exclude reference to the terms "cumulative trauma disorder" and "cumulative trauma injuries" and the Court will therefore deny Defendant's motion. To the extent witnesses refer to Plaintiff's diagnosed condition, however, they will use the terminology employed by his diagnosing physicians. Any other description will require laying additional foundation.

*MIL 34 (119) — Denied*

Photographs of other railyards are not categorically inadmissible. Such photographs may meaningfully and properly assist the jury in visualizing the conditions of Plaintiff's workplace — provided they are an accurate comparison. Plaintiff must, of course, lay a proper foundation prior to their admission.

*MIL 35 & 36 (ECF 112) — Denied*

The protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. Counsel for the two parties may have litigated prior, similar matters, but the trial in *this* matter has not yet begun. There is no basis to preclude the use of abstract phrases in yet-unmade arguments. Counsel will instead be ordered to comply not only with all applicable federal rules of procedure and evidence, but also to conduct themselves in a professional and fair-handed manner. The Court, and the public, will tolerate nothing less.

*MIL 37 (ECF 113) — Granted*

In light of Plaintiff's response that he "will not make any such argument," ECF 164, PgID 3832, the Court will grant the motion.

*MIL 39 (ECF 114) — Provisionally granted*

The Court is reticent to effectively resolve a question of claim preclusion via a motion in limine. Nevertheless, Defendant's argument under *Nickels* is persuasive. In light of the reasoning in *Nickels*, the question of ballast type and size would not seem to make Defendant's negligence under the FELA more or less probable. The Court will therefore grant the motion, subject to argument from Plaintiff prior to introducing testimony on the subject.

*MIL 40 (ECF 115) — Denied*

Defendant has indicated to the Court's staff that Plaintiff has no intention of calling Defendant's former employee, Rodney Pendergraff, thus mooting the motion in limine. The motion, however, remains pending, so the Court must address it. Defendant insists that one of the State Bar of Michigan's Ethical Opinions (R-2) prohibited Plaintiff's counsel from communicating with Pendergraff. The opinion, however, explained that the applicable rule

prohibiting contact with a represented party's employees (MRPC 4.2) does "not address communications with former agents and employees, and technically these should be no bar, since former employees cannot bind the organization[.]" ECF 115-5, PgID 2932. The opinion went on to admit that some jurisdictions have extended the communication prohibition to former employees who "continue to personify the organization even after they have terminated their employment relationship" or an employee who "still owes a duty to the organization, is privy to privileged information, entitled to attend meetings, or has an active ongoing relationship with the entity[.]" *Id.* at 2932–33. But the opinion concluded that these narrow exceptions did not apply in the case of a nurse who cared for a plaintiff during the time of an alleged malpractice but was no longer an employee of the defendant. On the facts before the Court, there is no impropriety in Plaintiff's counsel communicating with the former employee Pendergraff.

*MIL 41 (ECF 116) — Granted*

In light of Plaintiff's agreement with the relief sought, the phrase "workers' compensation" or any variant thereof shall be redacted from exhibits presented to the jury.

*MIL 42 (ECF 117) — Granted*

As with the motion concerning Pendergraff, Defendant has informed the Court's staff that Plaintiff will not be calling Steven Lilly, but again, the motion remains pending. Defendant claims that Steven Lilly was not timely disclosed as a witness. Plaintiff does not dispute the claim, but insists that there is no prejudice to Defendant because it is aware of Lilly and his likely testimony through a previous lawsuit. In the 6th Circuit, "Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified." *Sexton v. Uniroyal*

*Chem. Co. Inc.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003). Plaintiff may insist that transcripts from prior cases are just as good as deposing a witness anew in anticipation of a new trial—but that does not make it so. Defendant is entitled to fair warning of the witnesses to be presented at trial and the opportunity to depose those witnesses. Plaintiff has provided no defense for his untimeliness and his efforts to downplay the prejudice to Defendant only make the failure to disclose the witness more baffling. Steven Lilly will not be permitted to testify at trial.

*MIL 43 (ECF 118) — Denied*

The the protective measures sought by Defendant are too ambiguous to meaningfully assist in conducting the trial. Defendant seeks to preclude Plaintiff, "his counsel, his representatives, and his witnesses" from making direct or indirect references to a "conspiracy" to suppress information about ergonomics in railroad work. ECF 118, PgID 3087. There would be inadequate foundation for Dr. Andres—or any of Plaintiff's other witnesses—to testify to such a charge but the Court will nevertheless refrain from granting the motion in limine. Plaintiff is cautioned against soliciting baseless testimony in front of the jury.

II.  <u>Plaintiff's Motions</u>

*MIL 1 (ECF 120) — Granted*

Plaintiff believes Defendant has video surveillance of him at work. Defendant does not admit whether it has footage, but during discovery, refused to turn any over on the grounds of attorney-client privilege. Plaintiff is worried that Defendant will introduce footage as impeachment evidence at trial, and moves to preemptively preclude its admission. Plaintiff cites cases (though none in this circuit) in which courts have precluded undisclosed

surveillance tape, even for solely impeachment. The Court is satisfied that video surveillance in this case (in contrast to prior statements, records, etc.) may be particularly deceiving; springing it on opposing counsel at trial can be especially difficult to address. The video is excluded.

*MIL 2 (ECF 121) — Granted in part, denied in part*

The records relating to Plaintiff's filing for benefits under the RBR are not, categorically, more prejudicial than probative; neither are the records of RBR doctors who examined him. As explained in the above ruling on Defendant's second motion in limine, there is little relevance in testimony or argument that the Plaintiff is either entitled to or has received benefits from other sources. But the Court rejects Plaintiff's argument that *Eichel* forbids any information whatsoever concerning RBR benefits. There, the district court excluded evidence that the plaintiff "was receiving $190 a month in disability pension payments under the Railroad Retirement Act" *Eichel v. N.Y. Cent. R. Co.*, 375 U.S. 253, 253 (1963). The Supreme Court agreed with the determination and concluded that "the likelihood of misuse by the jury clearly outweigh[ed] the value of this evidence"—that is, evidence of the payments. *Id.* at 255. The Supreme Court's formal holding was that the district court "properly excluded the evidence of disability *payments.*" *Id.* (emphasis added). The Court must do the same here. Neither party may admit evidence that Plaintiff did indeed receive benefits, and in what amounts. Any otherwise-admissible evidence which reveals information about eligibility for benefits or the actual receipt of benefits shall be redacted.

*MIL 3 (ECF 122) — Denied*

Although prior, similar injuries are not a prerequisite for finding that Defendant was negligent, their sparsity or non-occurrence is not irrelevant. Plaintiff's concerns about confusing the jury are more properly remedied through jury instructions, not by barring relevant evidence.

*MIL 4 (ECF 123) — Granted in part, denied in part*

The Court thoroughly reviewed the parties' arguments and held a hearing on the matter a year ago. At that time, the Court believed that the issues in dispute might narrow as the parties prepared for trial and better determined precisely what testimony might be provided at trial and, consequently, whether any of it was legitimately objectionable. The Court therefore denied the motion without prejudice and anticipated a narrower challenge when renewed. Unfortunately, the present motion is no more narrow, and raises the same three issues. The filing is accordingly in all likelihood sanctionable.

A. Dr. Wojcik's causation testimony.

Dr. Wojcik is a biomechanical engineer, and her expert testimony is therefore limited to that discipline. She may apply the general principles of biomechanics to the facts in the case and opine on how a hypothetical person's body would respond to particular forces and what types of injuries would result. She may not testify about the cause of Plaintiff's specific injuries.

B. Wojcik's and Brookings's Allegedly Incomplete Reports

The experts' mere proviso that more specific disagreement with Dr. Andres would "be addressed in future deposition and/or trial testimony" does not render the reports incomplete. Wojcik and Brookings may testify at trial and their reports may be admitted into evidence. Testimony beyond what is reasonably contained in those reports, however, will

not be permitted. Because Defendant has not yet elicited any testimony that might exceed the opinions in the report, a ruling at this time would be premature.

C. Dr. Wojcik's Supplemental Report

Wojcik's very brief supplemental report contains no new theories and is therefore most accurately described as a supplement under Rule 26(e)(2), rather than an additional report under 26(a)(2). It was therefore not untimely. New *opinions* derived from the sources within the supplement—or any other source—are inadmissible.

*MIL 5 (ECF 124) — Denied*

A preemptive limit on the testimony is unnecessary and premature. Plaintiff's concerns can be more suitably addressed through objections if Defendant actually attempts to introduce testimony on Plaintiff's finances.

*MIL 6 (ECF 125) — Granted in part, denied in part*

Evidence concerning Plaintiff's obesity is relevant in light of the expert testimony that such a condition can be a cause of osteoarthritis. If Defendant can lay a foundation that other health problems are known causes of osteoarthritis, the evidence may likewise be admissible. Otherwise, evidence of Plaintiff's other health problems will be admissible only for the purposes of determining Plaintiff's future work prospects and as impeachment evidence insofar as it goes to Plaintiff's untruthfulness. Consistent with Defendant's response brief, any reference to Plaintiff receiving or being counseled for a DUI shall be redacted from materials shown to the jury.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: November 8, 2017          United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 8, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager